# **EXHIBIT 7**



# Umbrella Prime ®
# Commercial Umbrella Liability Policy With CrisisResponse ®

## DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | |
|---|---|
| ☐ AIG Property Casualty Company | ☐ Illinois National Insurance Company |
| ☐ American Home Assurance Company | ☒ National Union Fire Insurance Company of Pittsburg, Pa. |
| ☐ AIG Assurance Company | ☐ New Hampshire Insurance Company |
| ☐ Commerce & Industry Insurance Company | ☐ The Insurance Company of the State of Pennsylvania |
| ☐ Granite State Insurance Company | |

(each of the above being a capital stock company)
**Administrative / Mailing Address: 175 Water Street, New York, NY 10038**
**Telephone No. 212-458-5000**

**POLICY NUMBER**: 29 UD 080836467 4     **RENEWAL OF**: 29 UD 080836467 3

**ITEM 1.**

| NAMED INSURED: | PRIMARY ARMS LLC<br>- PRIMARY ARMS OPTICS |
|---|---|
| MAILING ADDRESS: | 3219 S SAM HOUSTON PARKWAY E<br>HOUSTON, TX 77047 |

**ITEM 2.    POLICY PERIOD:    FROM:** 04/06/2022    **TO:** 04/06/2023

(At 12:01 A.M. standard time, at the address of the Named Insured stated above.)

**ITEM 3.    LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $5,000,000 | **Each Occurrence** |
| B. | $5,000,000 | **General Aggregate** (in accordance with Section IV. Limits of Insurance) |
| C. | $5,000,000 | **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance) |
| D. | EXCLUDED | **CrisisResponse Sublimit of Insurance** |
| E. | EXCLUDED | **Excess Casualty CrisisFund Limit of Insurance** |

**ITEM 4.    SCHEDULED UNDERLYING INSURANCE:**    **See Schedule of Underlying Insurance**

**ITEM 5.    SELF-INSURED RETENTION:**    $10,000    **Each Occurrence**

**ITEM 6.    PREMIUM AND PREMIUM COMPUTATION**

| | |
|---|---|
| ESTIMATED TOTAL ANNUAL EXPOSURE | NOT APPLICABLE |
| RATES PER | FLAT |
| MINIMUM PREMIUM | $193,005.00 |
| ADVANCE PREMIUM | $193,005.00 |

**ITEM 7.    THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: <u>SEE ATTACHED SCHEDULE</u>**

| 80518 (11/09) | ©All rights reserved. | Page 1 of 5 |
|---|---|---|

GSNU-PRIMARY-00003990

# SCHEDULE OF UNDERLYING INSURANCE

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| 29 UD 080836467 4 | 04/06/2022 |

| TYPE OF POLICY OR COVERAGES | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS | |
|---|---|---|---|
| GENERAL LIABILITY | Granite State Insurance Company 02 LX 080836466 2 04/06/2022-04/06/2023 | $1,000,000 $2,000,000 $2,000,000 | Each Occurrence General Aggregate Products\Completed Operations Aggregate |
| | | ☐ | Per Project Aggregate Limit Applies |
| | | ☐ | Per Location Aggregate Limit Applies Defense Expenses are in addition to the limits |
| AUTO LIABILITY | Utica Mutual Insurance Company 5030108 04/06/2022-04/06/2023 | $1,000,000 | Combined Single Limit Defense Expenses are in addition to the limits |
| EMPLOYEE BENEFITS LIABILITY | Granite State Insurance Company 02 LX 080836466 1 04/06/2022-04/06/2023 | $1,000,000 $1,000,000 07/04/2017 | Each Occurrence Aggregate Limit Retroactive Date Defense Expenses are in addition to the limits |

| 80518 (11/09) | ©All rights reserved. | Page 4 of 5 |
|---|---|---|

GSNU-PRIMARY-00003993

# Umbrella Prime®

# Commercial Umbrella Liability Policy With CrisisResponse®

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

---

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

## I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY

A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

   The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

   1.  the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

   2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.  1. This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

   2. **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., an executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.  **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004003

1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

---

## II. INSURING AGREEMENT—CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

**A. CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

**B. Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

---

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004004

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured.** We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

   1. **Insureds**;

   2. claims made or **Suits** brought;

   3. persons or organizations making claims or bringing **Suits**; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

   1. damages included within the **Products-Completed Operations Hazard**; and

   2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004005

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F.  This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J.  The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

**K.**  We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss;** or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004006

    a.  any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

    b.  we then will be reimbursed up to the amount we have paid; and

    c.  lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3.  If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization.

**P.  Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**Q.  Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

**R.  Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

---

| **VII.  DEFINITIONS** |
|---|

A.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.  notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.  regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B.  **Auto** means:

1.  a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2.  any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

GSNU-PRIMARY-00004019

However, **Auto does not include Mobile Equipment**.

C.  **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D.  **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1.  damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2.  significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E.  **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1.  amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2.  amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G.  **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.  medical expenses;

2.  funeral expenses;

3.  psychological counseling;

4.  travel expenses;

5.  temporary living expenses;

6.  expenses to secure the scene of a **Crisis Management Event**; and

7.  any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004020

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your **Advertisement**; or

7.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V.  **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X.  **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004024

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.  **Property Damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD- ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004025

BB. **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work** means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

| _____ | _____ |
| Secretary | President |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GSNU-PRIMARY-00004026