UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
GRANITE STATE INSURANCE COMPANY                              :
et al.,                                                      :
                                          Plaintiffs,  :          23 Civ. 7651 (LGS)
                                                             :
                           -against-                         :          **OPINION AND ORDER**
                                                             :
PRIMARY ARMS, LLC,                                           :
                                          Defendant.   :
------------------------------------------------------------ X


LORNA G. SCHOFIELD, *District Judge*:

        Insurance company Plaintiffs Granite State Insurance Company ("Granite State") and

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") bring this action

for declaratory relief against Defendant Primary Arms, LLC, ("Primary Arms") a firearms

retailer.  Plaintiffs' complaint (the "Complaint") seeks a declaration that they need not defend nor

indemnify Defendant in three lawsuits (the "Underlying Suits") brought respectively by the State

of New York and the cities of Buffalo and Rochester.  The Underlying Suits allege that Defendant

sold and shipped unfinished firearm parts that evaded gun control laws and regulations, and that

Defendant's sales contributed to an increase in gun violence.  In this action, Defendant asserts

counterclaims, including for breach of contract and declaratory judgment that Plaintiffs have a

duty to defend Defendant in the Underlying Suits.

        The parties cross-move for partial summary judgment on the issue of Plaintiffs' duty to

defend.  For the reasons below, Plaintiffs' motion is granted, and Defendant's motion is denied.

## I.    BACKGROUND

The following facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on these motions.  The facts are undisputed except as noted.

Plaintiffs are insurance companies that issued commercial general liability and commercial umbrella liability policies (the "Policies"), respectively, to Defendant.  Defendant is a Texas-based firearms retailer that sells and ships firearms and firearm components across the United States, including to New York.  Defendant's products include unfinished frames and receivers for firearms. These unfinished parts allegedly can be converted with relative ease into completed firearms.  These unfinished parts are sold without the serial numbers that are required by law to be applied to finished firearms and are sold without requiring that their buyers have a firearms license or undergo a background check.  The untraceable firearms made from these parts are sometimes called "ghost guns."

The State of New York and the cities of Buffalo and Rochester in separate actions are suing Defendant and other firearms retailers, alleging that they knowingly marketed their unfinished products to buyers who would otherwise be prohibited from owning firearms by gun control laws and regulations.  These sales are alleged to have contributed to an increase in gun violence.  The New York state suit alleges that Defendant violated state and local bans on selling or distributing unfinished frames and receivers, that Defendant marketed the unfinished frames and receivers as a means to evade firearm regulations and that Defendant's actions caused monetary damages, including from increased spending on law enforcement and community support and services.  The New York suit brings claims for illegal and fraudulent conduct in violation of N.Y. Executive Law section 63(12), N.Y. Business Law sections 349 and 350, and

claims for public nuisance, negligence per se and negligent entrustment.  The suits brought by Buffalo and Rochester make similar allegations and claims related to Defendant's selling and shipping of unfinished frames and receivers into those two cities.  Specifically, those suits allege that Defendant sold and distributed unfinished frames and receivers illegally and contributed to gun violence by failing to prevent the diversion of its unfinished frames and receivers into the illegal gun market, thus violating N.Y. General Business Law section 898 (a-e) and creating a common law public nuisance.  The Buffalo and Rochester suits also allege deceptive business practices in violation of N.Y. Business Law sections 349 and 350.

Defendant tendered notice of the Underlying Suits to Plaintiff Granite State, demanding that Granite State defend and indemnify Defendant for the suits.  Granite State denied Defendant's claims.  Defendant has not tendered notice of the Underlying Suits to, nor sought coverage from, Plaintiff National Union, which issued the umbrella policy.

## II.    STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[1]  "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Id.*  On

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

cross-motions for summary judgment, "the court evaluates each party's motion on its own merits and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

### III.    DISCUSSION

#### a.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on their first and third causes of action, which seek a declaration that the respective Plaintiffs do not owe Defendant a duty to defend the Underlying Suits, and on Defendant's first and second counterclaims for breach of contract and a declaration that Plaintiffs do owe a duty to defend.  Plaintiffs' motion is granted because the Underlying Suits do not trigger a duty to defend under the Policies' terms.

##### i.    Choice of Law

Texas law applies to this case.  A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022).  As the Policies contain no choice of law provision, New York law requires the Court to apply "the center of gravity" approach, "pursuant to which the court applies the law of the place which has the most significant contacts with the matter in dispute." *RLI Ins. Co. v. AST Eng'g Corp.*, Nos. 20-214-CV, 20-596-CV, 2022 WL 107599, at *2 (2d Cir. Jan. 12, 2022) (summary order).  In insurance actions, "courts in New York generally apply the law of the jurisdiction which the parties understood was to be the principal location of the insured risk unless with respect to the particular issue, some other jurisdiction has a more significant relationship." *Id.*  "Where the policy covers risks in two or more states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk." *Id.*

Texas law applies because the Policies cover risk in multiple states, Defendant is a Texas limited liability company headquartered in Texas, and the parties do not dispute that Texas law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law  . . . .").

### ii. Occurrence

The Policies obligate Plaintiffs to defend Defendant against any suit seeking "damages because of 'bodily injury' or 'property damage'" that were "caused by an occurrence." The language of the two Policies, issued by Plaintiffs respectively, have materially identical terms. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." As explained below, the Underlying Suits do not allege conduct that is an "occurrence." Therefore, the duty to defend is not triggered, and summary judgment is granted to Plaintiffs.

Under Texas law, courts apply the "the eight-corners rule," whereby "the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). "[T]he duty to defend arises when the plaintiff alleges facts that would give rise to any claim against the insured that is covered by the policy." *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 559 (5th Cir. 2020) (Texas law). In considering the underlying complaint, courts look to "the underlying factual allegations" and "not its legal theories" in evaluating whether the complaint alleges a covered claim. *Uretek (USA), Inc. v. Cont'l Cas. Co.*, 701 F. App'x 343, 344 (5th Cir. 2017) (Texas law).

Here, the issue is whether the Underlying Suits seek damages because of bodily injury or property damage caused by an "occurrence," which is defined as "an accident . . . ." "Under Texas law, a person's act is not an accident when (1) he commits an intentional act that (2) results in injuries that ordinarily follow from or could be reasonably anticipated from the intentional act.  [I]n this context, an intentional act and the intent to cause injury are two distinct concepts." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc*., 73 F.4th 322, 329 (5th Cir. 2023) (construing an insurance policy that defined "occurrence" as an "accident").  As an example, "the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person committed an intentional act, even though the harm was not intentional." *Id.*

Defendant argues that the Underlying Suits allege an "occurrence" arising from an "accident" because Defendant's allegedly wrongful conduct was negligent rather than intentional -- specifically that Defendant allegedly failed to implement controls as to who could purchase its products.  Because Texas law requires an evaluation of facts alleged and not legal theories, Defendant argues that the relevant allegations are only those that specifically name Defendant and not those that reference "all defendants," "each defendant" or similar collective statements, as those allegations are conclusory as applied to Defendant specifically.  According to Defendant, the only allegations that should be considered are that (1) Defendant shipped at least 25,428 packages into New York between July 25, 2016 and August 9, 2022 and that a significant portion of those packages contained unfinished frames and receivers; (2) some of these packages were sent to people without licenses to possess or own firearms and (3) these facts demonstrate that Defendant lacked controls to keep its products out of the hands of people who are prohibited from accessing firearms.

Defendant's effort to exclude critical allegations in the Complaint are unavailing. While conclusory allegations may be ignored, the allegations pleaded against the collective group of defendants do apply to Defendant as a member of that group and are pleaded with sufficient detail to avoid being conclusory. The allegations make clear that Defendant's alleged conduct was not an "accident" but instead comprised intentional acts that "result[ed] in injuries that ordinarily follow from or could be reasonably anticipated" from that act. *Discover Prop. & Cas. Ins. Co.*, 73 F.4th at 329.

For example, the allegations in the New York complaint include statements that "[d]espite the illegality of their conduct, each [d]efendant has intentionally and repeatedly marketed, sold, and shipped unfinished frames and receivers into New York," that "[d]efendants specifically market the unfinished frames and receivers as designed to evade federal gun laws" that "[e]ach [d]efendant intended to sell and knowingly sold unfinished frames and/or receivers to individuals who were likely to create an unreasonable risk of harm to others, such as those with criminal convictions, subject to restraining orders, with disqualifying mental health histories, or who lacked proper licensing and training" and that "[d]efendants here have done and continue to do nothing to geographically restrain the marketing of their prohibited products, and they employ policies and practices that result in sales of these illegal products directly to unknown and deliberately unchecked individuals in New York." The New York complaint alleges that unfinished firearms are designed to flout gun control laws and regulations that have been repeatedly demonstrated to lower gun violence. The New York complaint also alleges that ghost guns may have become a "weapon of choice" in violent crimes and are disproportionately used in such crimes as compared to traditional, registered firearms. Similar allegations are made in the Buffalo and Rochester suits.

As to Defendant specifically, the Underlying Suits allege that Defendant marketed its products, including unfinished frames and receivers, in New York using its online website, and became "one of the fastest growing e-commerce retailers."  The New York complaint alleges that "[i]t is not surprising that individuals who are looking to get around gun control laws found Primary Arms' website and became customers.  Primary Arms' business practices have increased the number of dangerous ghost guns present in the State.  Indeed, Primary Arms has shipped large numbers of its illegal products into New York" including after New York's ban on unfinished frames and receivers.  Read as a whole, the New York complaint alleges that Defendant is one of several retailers that have capitalized on the strategy of selling unfinished frames online and "failed to exercise any controls on its sales."  Considering the allegations about who seeks out ghost guns and what happens when they do, the Underlying Suits allege that Defendant took deliberate action to enable the anonymous acquisition of uncontrolled firearms with the predictable outcome of increasing gun violence.

Defendant's argument that claims sounding in negligence must allege "occurrences" is unpersuasive.  Under Texas law, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."  *Lamar Homes, Inc. v. Mid-Continent Cas. Co*., 242 S.W.3d 1, 8 (Tex. 2007).  Here, Defendant's uncontrolled sales were not an "accident" because their effect was alleged to be fully intended and expected and therefore not an "accident."  The allegations in the Underlying Suits, as described above, make clear that the failure to perform any checks regarding Defendant's customers was not a mistake, but rather a deliberate part of Defendant's business and marketing model in order to maximize sales.  The claim is not that Defendant forgot to run a background check on certain customers or misplaced its paperwork;

rather, the allegations are that Defendant made a deliberate choice not to implement internal controls. The expected result of not implementing controls is that individuals who are prohibited from owning firearms -- because their owning firearms poses an increased risk for societal harm -- can obtain firearms by purchasing Defendant's products. These allegations may be presented as negligence claims, but they do not allege an accident. Defendant's choice not to implement controls despite the well-known risks of not doing so is far more analogous to a defendant's choice to ignore warnings of *Listeria* contamination leading to a *Listeria* outbreak, which was held to be non-accidental conduct, than to a contractor's undiscovered faulty workmanship later leading to property damage, which was held to be accidental conduct. *Compare Discover Prop. & Cas. Ins. Co*., 73 F.4th at 329, *with Lamar Homes, Inc*., 242 S.W.3d at 8. Plaintiffs have no duty to defend in the Underlying Suits because the alleged injuries were not caused by an "occurrence" and therefore are not covered by the Policies."[2]

### b. Defendant's Motion for Summary Judgment

Defendant cross-moved for partial summary judgment on whether Plaintiffs have breached their duty to defend as a matter of law and on Defendant's request, as the prevailing party, for the attorneys' fees and costs incurred in defending this action. Because Plaintiffs are not obligated to defend in the Underlying Suits, as explained above, Defendant is denied summary judgment.

---

[2] This decision does not address whether the Underlying Suits are outside the scope of the Policies' coverage for the additional reason that they do not allege "bodily injury" or "property damage." Texas courts have not yet decided whether injuries alleged by governmental plaintiffs under public nuisance theories constitute damages because of bodily injury or property damage. Rather than try to predict how the Supreme Court of Texas would decide those issues, they are not addressed.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is

**GRANTED**.  The Policies do not obligate Granite State or National Union to defend Primary

Arms in the Underlying Suits.  Defendant's motion for partial summary judgment is **DENIED**.

Plaintiffs' request for oral argument is denied as moot.

For clarity, the surviving claims and counterclaim, which were not the subject of these

motions, are: (1) Count II of the Complaint for a declaration that Granite State does not owe a

duty to indemnify; (2) Count IV or the Complaint for a declaration that National Union does not

owe a duty to indemnify and (3) Primary Arms's third counterclaim for bad faith.  However, the

reasoning above would seem to be dispositive of these claims as well.  By **September 6, 2024**,

the parties shall file a joint letter stating what they propose as next steps.

The Clerk of Court is respectfully directed to close the motions at Dkts. 37 and 41.

Dated:  August 30, 2024
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

10